[Sac. No. 529.   Department Two.—September 14, 1899.]

## PLACER COUNTY BANK, Appellant, v. W. A. FREEMAN and F. H. BELL, Respondents.

CONTRACTS—CONSIDERATION FOR DRAFT—ADVANCE BY PAYEE—IN-SOLVENCY OF DRAWEE—LIABILITY OF DRAWERS.—Money advanced by a bank in this state, and receipted for by persons for whose benefit a telegram was received by such bank from a Chicago bank that the amount advanced was on deposit subject to its draft for them, is a sufficient consideration to support their draft on the Chicago bank in favor of the local bank for such amount; and, upon the intervening insolvency of the Chicago bank, the local bank may collect the amount of the draft from the drawers.

ID.—FAILURE TO READ DRAFT—MISTAKEN SUPPOSITION.—The failure of the drawers to read the draft, and their mistaken supposition that it was but another form of a receipt for the money, better evidencing its payment, so that the local bank could more readily obtain its money from the Chicago bank, cannot affect their liability upon the draft, in the absence of any improper action upon the part of the local bank, or of any confidential relation between the parties.

ID.—EQUAL FOOTING OF PARTIES TO CONTRACT—NEGLIGENCE OF OBLIGOR—MEANS OF KNOWLEDGE.—If the parties to a contract are upon an equal footing with each other, and no fraud or undue influence has been practiced, and there are no relations of confidence and trust between them, and the means of knowledge are equally open to both, an obligor who negligently omits to read the contract, or to have it read, and who fails to use the means of knowledge open to him, cannot be relieved from his folly by the courts, either of law or of equity.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. R. C. Rust, Judge Presiding.

The facts are stated in the opinion.

John M. Fulweiler, for Appellant.

Pullen & Wallace, and Tuttle & Wright, for Respondents.

CHIPMAN, C.—Plaintiff alleges that defendants delivered to plaintiff, at its date, their certain bill of exchange reading as follows:

"500.00.                    Auburn, Cal., Dec. 17, 1896.

"At sight, pay to the order of Placer County Bank five hundred dollars, value received, and charge the same to the account of Bell & Freeman.

"To E. S. Dreyer & Co., Chicago."

That the same was presented for payment to the drawee December 23, 1896, and payment was refused and notice of nonacceptance was duly given to defendants, but they have not paid the same. Defendants deny any indebtedness, and as a separate defense pleaded want of consideration, and set up certain facts in effect showing that they signed the draft believing it to be a receipt only for the money, as to which the findings are substantially as pleaded by defendants. The trial was by the court without a jury. The court found that one Graves was indebted to Bell & Freeman each in the sum of two hundred and fifty dollars, and, being then in Chicago, where he resided, and desiring to transmit the money to them, he drew his check upon Dreyer & Co. in favor of plaintiff; that to make payment to plaintiff Graves requested Dreyer & Co. to, and they did, send the following telegram:

"Chicago, Ill., Dec. 17, 1896.
"To Placer County Bank, Auburn, Cala.:

"We hold five hundred dollars subject your draft for Bell & Freeman.

"E. S. Dreyer & Co.,
"Bankers."

That plaintiff received the telegram, and on the same date paid to Freeman said sum, and Freeman gave plaintiff a receipt acknowledging payment; about fifteen minutes later, Nichols, plaintiff's cashier, who had made the payment, called Freeman back and handed to him the instrument set forth in the complaint, and informed him the former receipt was insufficient, and requested him to sign the said instrument for Bell and himself as and for an additional receipt to evidence said payment, and that Freeman signed the same, not knowing it was a draft upon Dreyer & Co., but believing it simply an additional receipt; that the draft was presented and dishonored December 23d, and, at the time the draft was signed by Free-

man for defendants, there was no money on deposit with Dreyer
& Co. subject to defendants' draft, but said money was deposited
subject to the order of plaintiff, and these facts were known to
plaintiff at that time. It is further found that no considera-
tion passed from plaintiff to defendants, or either of them, for
said draft.

As conclusion of law, the court found that plaintiff, by the
payment, accepted the said telegraphic order, and, in so doing,
acted as the agent and trustee of Dreyer & Co., and not of
defendants, or either of them. Judgment went for defendants,
from which and from the order denying motion for a new trial
plaintiff appeals. It is claimed that the findings and decision
are not supported by the evidence.

It appears from the evidence that Graves had entered into
engagements with Bell & Freeman in a transaction relating to
the purchase of a mine, and it became necessary that he should
pay them five hundred dollars on December 17th. He placed
the amount in the hands of Dreyer & Co. to be transmitted to
plaintiffs through the Placer County Bank at Auburn, where
Bell & Freeman were. Mr. Wallace, at Auburn, had been act-
ing, as he testified, "as agent between Mr. Graves and Bell &
Freeman in relation to this transaction." He had informed
Graves of the necessity for sending this money. Mr. Berger,
of Dreyer & Co., drew the dispatch and signed it for the firm,
and Graves sent it. Mr. Wallace was expecting the remittance,
and went to the Placer County Bank to learn if it had been
received, and being told there was money there for Bell & Free-
man, he sent Freeman to the bank. Prior to the sending of this
telegram the Placer County Bank had no relations with Graves
or the Chicago bank, or with Bell & Freeman, so far as appears
from the evidence. The Placer County Bank was brought into
the transaction by this message. The finding that the money
was on deposit with Dreyer & Co., subject to the order of plain-
tiff, and not subject to defendants' draft, is not sustained by
the evidence, for the reason that it clearly appears that the
money was there on deposit, as the telegram showed and as was
the undisputed fact, for Bell & Freeman, and not for plaintiff,
though for the purposes of the transmission it was made sub-
ject to plaintiff's draft. Dreyer & Co. had no money belonging

to plaintiff, but they had five hundred dollars left there to be transmitted for Bell & Freeman. There is some conflict in the evidence as to what occurred in getting the money into the hands of Bell & Freeman.

Nichols testified: "That telegram, at first reading, I took for a direct order to pay money from Chicago, and I took Freeman's receipt for that amount; I gave him five hundred dollars, and took his receipt. It was signed W. A. Freeman. He then went out, and, upon examination of the telegram afterward, as to the meaning of it, I saw that it was not an order, but merely a notification that there was money in Chicago with E. S. Dreyer & Co." He then testifies that he called Freeman back and told him that he (Nichols) "would have to change the advice in order to get the money." He testified: "I didn't say anything to him about signing a receipt. I said I wanted him to change it; that the paper I had wouldn't do. I don't know whether he read the paper he signed; he had opportunity to do so; I cautioned him particularly to sign it 'Bell & Freeman,' according to the telegram. He raised no objection and went out. That was the last of it." Upon cross-examination, he testified that he supposed the draft of the Placer County Bank would have been paid, accompanied by the receipt for the money, by Bell & Freeman; but that it would not have been the proper way to do. Freeman's version as to the payment of the five hundred dollars and giving a receipt in the first instance does not differ materially from Nichols', but as to the second paper, signed "Bell & Freeman," he testified that he did not examine it or read it, although he says he could have done so; that he supposed it was a receipt and did not know it was a draft; that he understood Nichols to call him back to sign a receipt, and that when he signed the paper nothing was said about a draft. He further testified: "Had I known that instrument was a draft, I would not have signed a draft for Mr. Bell. I might have signed one for myself." It was admitted of record "that in these matters defendant Freeman acted as, and was, the agent of defendant Bell." On rebuttal Nichols testified: "I told him he would have to change the paper in order to collect the money in Chicago. I said nothing about a receipt. I don't think I mentioned the name of the draft, but I said I would have to have

a different paper to collect the money in Chicago." It appears that on December 23d, when the draft reached Chicago, Dreyer & Co. had suspended business, and a receiver was in charge, and for this reason the draft was not paid.

No question of fraud or undue influence, or the existence of any confidential relations between plaintiff and defendants is presented or claimed by defendants to arise either from the pleadings or the evidence. Defendants' position is stated in their brief as follows: "We do not ask the court to correct a draft and hold it to be a receipt, but we do ask the court to hold that the draft was given without consideration, and that it was obtained by the bank, and was expressly understood by both parties to be for the better evidencing the payment of the money to defendants, so that plaintiff could the more readily obtain its money from the Chicago bank, to whom it had given the credit."

We do not think there was lack of consideration for the only reason urged, to wit, that defendants had already received the money and receipted for it. The draft was part of the same transaction, and as much consideration existed for it as for the receipt. The evidence is that plaintiff had no interest in the matter beyond the usual exchange, and, as we have seen, the money was deposited at Chicago to be sent to defendants. Nor do we think plaintiff was the agent of the Chicago bank in the sense urged by defendants, and as the court found in its conclusions of law. It is true the telegram was authority for plaintiff to draw on Dreyer & Co., but with the direction that it was for "Bell & Freeman"; plaintiff had no authority to draw otherwise. Plaintiff was as much the agent of defendants as of Dreyer & Co.

The real question in the case we think is: Should defendants, in view of all the undisputed facts, be permitted to avoid the consequences of their voluntary acts? Obviously, the loss in the transaction, by the plainest considerations of justice, ought not to fall upon plaintiff, and we think the rules of law call upon us so to hold. The principle governing the case has been applied many times and under a great variety of circumstances. It is this: Where a person enters into an obligation with another upon an equal footing—i. e., where he does so free from any

fraud practiced upon him, and not being under any undue influence, and there are no relations of confidence and trust, and the means of knowledge are equally open to both, and he executes the instrument without reading it or having it read to him, and without exercising the means of knowledge open to him—neither the courts of law nor courts of equity will relieve him from the effects of his folly.    Judge Story, in his Equity Jurisprudence, section 200 a, quotes the rule from Kent's Commentaries as follows: "The common law affords to everyone reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information."    Among other cases found in our reports upon the question are: *Hawkins v. Hawkins*, 50 Cal. 558; *Senter v. Senter*, 70 Cal. 619; *Metropolitan etc. Assn. v. Esche*, 75 Cal. 513; *Crane v. McCormick*, 92 Cal. 176.

The judgment and order should be reversed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment . and order are reversed.

McFarland, J., Temple, J., Henshaw, J.