[L. A. No. 1043. Department Two.—November 17, 1902.]

## GERMAIN FRUIT COMPANY, Appellant, v. WESTERN UNION TELEGRAPH COMPANY, Respondent.

TELEGRAPH COMPANY—INCORRECT TELEGRAM—FRAUD OF RECEIVER—DE-FENSE TO ACTION—ABILITY TO PREVENT LOSS.—It is an available defense to an action by the sender of a telegram to recover damages for a mistake of the operator in omitting a necessary word in the price of oranges to show that plaintiff might have prevented the loss by causing the message to be repeated, and by compelling the receiver of the telegram to pay the market price of oranges ordered by him in bad faith, with knowledge of their true market value, and of the presumed incorrectness of the telegram, fraudulently intending to pay only the price incorrectly stated therein.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Ward Chapman, for Appellant.

R. B. Carpenter, and George H. Fearons, for Respondent.

TEMPLE, J.—This action is for damages occasioned by alleged negligence in the transmission of a telegraph message. Judgment was for the defendant, and plaintiff appeals from the judgment and from an order refusing a new trial.

The plaintiff is a wholesale dealer in fruits, and engaged in buying and selling fruits and in shipping from Southern California to various points East. On the 18th of February, 1887, plaintiff received a dispatch from Cornforth & Co., fruit merchants at Denver, Colorado, asking for prices of oranges. In response plaintiff sent the following dispatch to Cornforth & Co.: "Offer Los Angeles, San Gabriel, Santa Ana oranges, one fifty; Riversides, two sixty." As delivered to Cornforth & Co. the dispatch was altered by the omission of the word "two." As sent the telegram was easily understood as an offer of Los Angeles, San Gabriel, or Santa Ana oranges, at $1.50 per box, and of Riverside oranges at $2.60

per box. As received, it was understood, and would have been understood, by those engaged in the trade at Denver, as an offer of Riverside oranges at $1.60 per box. Two carloads of Riverside oranges were ordered by Cornforth & Co., and were shipped to that firm by plaintiff, and were duly received, but Cornforth & Co. refused to pay more than $1.60 per box for them. Plaintiff settled with Cornforth & Co. at that rate, and brought this suit to recover the difference between the price stated in the offer as delivered to defendant for transmission and as delivered by it to Cornforth & Co.

The defendant practically admits the receipt and delivery of the message as charged, but denies that the change in the language of the message was caused by the gross carelessness or negligence of the defendant, its servants, or agents. It also denies that Cornforth & Co. relied upon the dispatch as received, and avers that they well knew at the time that Riverside oranges were worth $2.60 per box in the Los Angeles market, and therefore that the word "two" and not the word "one" should be supplied before the word "sixty" in the message as delivered. It charges that Cornforth & Co. intended to defraud either the plaintiff or defendant. It is contended, therefore, that plaintiff could and should have compelled Cornforth & Co. to pay for the oranges at market rates, in which event there would have been no loss.

The court found, among other facts:—

1. The dispatch was sent, received, and delivered as alleged;

2. The omission of the word "two" was not done through gross carelessness or gross negligence;

3. The telegram as received by Cornforth & Co., according to usage, was properly understood as an offer of Riverside oranges at $1.60 per box; that Cornforth & Co. at the time knew the market price of Riverside oranges at Riverside and Los Angeles, and such price was so much greater than that named that Cornforth & Co. had reason to believe that there was a mistake, and therefore did not rely upon the telegram as giving the correct price, and did not act in good faith in sending their orders for two carloads at once;

4. Plaintiff shipped the carloads to Cornforth & Co., believing that the dispatch had been correctly sent, and that Cornforth & Co., by giving the order, was bound to pay $2.60 per box, which was the market value of the goods. Cornforth

& Co., however, refused to pay, and have not paid, more than $1.60 per box, and plaintiff has been damaged by the negligence of the defendant in transmitting and delivery of the said dispatch in the sum of $939;

5. Plaintiff was not aware that Cornforth & Co., at the time knew the real price of Riverside oranges, nor did Cornforth & Co. know the telegram was sent, received, or paid for, as containing ten words, or that it contained only nine words as delivered, or that any word had been omitted therefrom, or that the word "two" and not the word "one" should be understood before the word "sixty," but they had good reason to suspect or believe that something had been omitted, and that there was a mistake as to the price of Riverside oranges;

6. The dispatch was sent subject to the conditions appearing upon the blank upon which it was written. In effect, that the message must be ordered "repeated" by the sender, who for that service must pay one half the cost of sending it, and the sender agrees that the company "shall not be liable for mistakes or delays in the transmission or delivery, or for no -delivery, of any unrepeated message, whether happening ]y negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured," nor then for errors in ciphers or obscure messages. Also, that it is not true that the mistake in the telegram was caused by atmospheric disturbances alone, nor wholly by the unavoidable pressure of business, nor is it true that defendant used great care and diligence in the transmission and delivery of the telegram. One line between the two points involved was out of order and could not be used, "throwing an unusual amount of business upon that line, all without the fault of the defendant, and thereby making it necessary for the operators to work at a higher rate of speed than usual, and in so doing, and while endeavoring to use great care to correctly transmit and deliver telegrams coming over the line, the operator by a slight inadvertence omitted said word from said telegram, and delivered the same without observing the mistake, all of which was due to a slight degree of carelessness on the part of defendant's employees."

It will be observed that the court finds that the omission of the word was caused by the negligence of the receiving operator, although the negligence is characterized as a "slight inadvertence" and as "a slight degree of carelessness," and expressly states that it was not "gross negligence."

It is argued with great force and plausibility for the appellant that these findings, notwithstanding some inconsistent phrases, did really find that the mistakes were occasioned through the gross negligence of the defendant. The error, it is said, was caused by the attempt to do too much work on one wire, because another which was ordinarily available had been prostrated by a storm on a previous day. This, it is argued, is conclusive evidence of negligence which may even be said to be willful. No pressure of work could justify undue haste—such haste as would increase the liability to make mistakes.

In effect, the corporation contracts for accuracy when it agrees to send the very message delivered to it. The telegraph would be of little use to the business world unless it is thoroughly reliable. But we do not find it necessary to pursue the subject, because we are convinced that the other defense must prevail.

It is found that Cornforth & Co. did not rely upon the telegram as it was delivered to them, although the message as delivered would properly be understood as offering Riverside oranges at $1.60 per box, had not the state of the market been such as to indicate 'that a mistake had been made. That Cornforth & Co. did know the market price of Riverside oranges at Denver and at Los Angeles, which was considerably more than $1.60 per box, "sufficiently to put Cornforth & Co. on inquiry as to whether or not said telegram was correct, and they made no inquiry and took no steps to ascertain the correctness of said telegram, but ordered of plaintiff two cars of oranges, Riversides, at once, and not in good faith." It is further found that Cornforth & Co. knew that Riverside oranges were at the time worth at least $2.60 per box at Los Angeles, and were practicing a fraud when they ordered one thousand boxes, intending to defraud defendant, the Germain Company, out of the difference between what they well knew to be the price and the price they falsely pretended to believe had been telegraphed by plaintiff. The conclusion naturally

followed that plaintiff had a good cause of action against Cornforth & Co., and could not waive an action against that firm, and assume that it had suffered a loss through the mis-sent message, when it had permitted Cornforth & Co. to get away with a fraudulently acquired advantage. It could have compelled Cornforth & Co. to pay what they knew was the real price, and thus could have avoided loss.

Appellant contends,—1. That such defense is not open to the defendant; and 2. That the finding is not sustained by the evidence. The telegraph, it is argued, is the agent of the sender, who is bound by the acts of its agent. The recipient of the message has the absolute right to rely upon the message as correct, and to act upon it. Cornforth & Co. did act upon it, and plaintiff did actually incur the loss as the court finds.

This is correct, provided that there was nothing to put Cornforth & Co. on inquiry. But it found not only that there was reason to suspect that a mistake had been made, but that Cornforth & Co. actually knew that the message had not been correctly sent, and acted upon it in bad faith. It will not do to say that such a defense should never prevail. Such a rule would open the door to collusion and fraud.

The embarrassment comes from the fact that the suit could not be brought against both Cornforth & Co. and this defendant; and consequently the plaintiff might be successively defeated in his action against each, and judgment ordered against him in one case would not conclude the other party. This is true, but it is necessarily a defense to show that plaintiff might have avoided the loss. As to such issue the defense has the laboring oar, and should be required to make out a clear case.

I think the evidence was sufficient to sustain the finding. I would have been as well satisfied with the finding had it been the other way, but there is much evidence to sustain it.

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.