[Civ. No. 13834.   First Dist., Div. Two.   June 2, 1949.]

ALBERT F. ROLLER, Appellant, v. CALIFORNIA PA-CIFIC TITLE INSURANCE COMPANY (a Corporation), Defendant; H. M. H., INC. (a Corporation), Respondent.

Lloyd S. Ackerman and Philip S. Mathews for Appellant.

Hoffman & Draper for Respondent.

GOODELL, J.—Appellant sued respondent for $5,000 in an action for money had and received. The $5,000 was escrowed with the title company which was joined only because of the escrow. It paid the $5,000 into court and was dismissed from the case. A judgment against the plaintiff, which awarded the $5,000 to respondent, was entered on the findings, and this appeal followed.

The litigation arose out of a contract for the sale by respondent to appellant of a piece of improved real property in the city of San Mateo. The legal effect of the judgment was to

hold the contract valid and enforceable, and to hold, further, that it had been breached by appellant.

After paying the initial $5,000, appellant served a notice of rescission and filed this action to recover it back.

The property formerly belonged to one Martin A. Poss, and a deed of trust covering it had been given by respondent, the owner, to Poss and others, to secure a promissory note for $42,000.

On August 3, 1946, a "deposit receipt" was drawn which constitutes the contract in suit. It was signed on that day by appellant and on the next day by respondent.

It showed the purchase price to be $60,000, acknowledged the receipt of $5,000, called for the payment of $13,000 within 30 days, and provided: "Buyer to take over present mortgage of $42,000 at 4% interest, held by Martin Poss, and is subject to conditions of this mortgage . . ." It then provided that respondent, doing business as Poss Flowers (the property was at the time a nursery and flower store), would lease the property from appellant for 10 years at a monthly rental of $500, and that all clauses of the lease would be included on the standard form of business lease usage, accepted by both parties.

The controversy pivots on the following provision in the deposit receipt: "Any failure to pay rent when due may, at buyer's option, be credited against buyer's obligation to pay balance of purchase price." It is obvious that with the $5,000 and $13,000 payments and the outstanding encumbrance of $42,000 payable, not to the vendor but to a third party, Poss, there would be no balance subject to offset.

On August 19, respondent lodged with the title company a deed executed and acknowledged by respondent to appellant with escrow instructions as to its delivery; an agreement to be signed by the buyer assuming and agreeing to pay the respondent's $42,000 note secured by deed of trust to Poss, and a form of the proposed 10-year lease to be executed by both parties.

The next day appellant sent respondent a notice of rescission which specified as its grounds that appellant's "consent . . . was given by mistake exercised by or with your connivance, and by misrepresentation and/or mistake in that the undersigned would not have entered into said contract had not you and your agents represented to the undersigned that (1) you would enter into a lease of said property for a period

of ten years at a monthly rental of $500.00 plus certain other payments, and (2) your obligation to pay the rental thereunder would be secured by the right of the undersigned to offset unpaid rent and other sums becoming due under the lease against the unpaid portion of the purchase price . . . Said agreement of sale is incomplete, indefinite, ambiguous and uncertain and not enforceable as an executory contract to enter into a lease. Said agreement provides no security for said rent and other payments."

On the 22d, respondent sent a letter to appellant in which it offered to do whatever was needful to meet appellant's objections, but nothing came of the parleys which ensued.

Appellant says "The basic issue on this appeal is whether there was the 'consent' required by Civil Code, sec. 1550(2) to the contract which is the subject of this action."

Mistake was the principal foundation on which appellant's notice of rescission was based (see *McCall* v. *Superior Court*, 1 Cal.2d 527, 533 [36 P.2d 642, 95 A.L.R. 1019]) and he elected to sue for money had and received, a procedure fully sanctioned in this state. (*Philpott* v. *Superior Court*, 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990].) That being so, his "right to recover is governed by principles of equity, although the action is one at law" (*id.*, p. 522) and the burden of proving all the elements of actionable mistake was, of course, appellant's.

There was no express finding on the question of mistake, as appellant points out, but on that score he cannot complain since he did not plead mistake. Indeed there is nothing in his pleadings (or briefs) to indicate whether he relies on a mistake of fact or of law. That a mistake was made by appellant may be conceded, but whether it was one from which he can be relieved in equity is another question and a serious one. The finding that a contract had been entered into, and breached by appellant, of course negatives the claim of actionable mistake.

The notice of rescission asserts that appellant's consent was given by mistake "exercised by or with your [respondent's] connivance, and by misrepresentation and/or mistake" and that respondent and its agents misrepresented that the rental would be secured and could be offset. There was no evidence of any misrepresentation or connivance, and the court found that respondent made no representation.

A real estate broker named Lilienthal initiated and carried on the negotiations. The court found that in doing so he was not the agent of respondent, and appellant presents this appeal on the assumption that he was not.

The court found that the agreement was drawn and prepared by plaintiff and that it was not drawn or prepared in any way, directly or indirectly, by defendant. When read in connection with the finding that the broker was not respondent's agent the finding may be taken as meaning that appellant himself was responsible for the language which he now claims caused the mistake. Whether appellant was negligent is purely a question of fact.

Section 1577 of the Civil Code in defining mistake of fact rules out, in its opening sentence, such mistake as is "caused by the neglect of a legal duty on the part of the person making the mistake."

One of the leading cases on rescission is *Grymes* v. *Sanders*, 93 U. S. 55 [23 L.Ed. 798], which has been followed in scores of cases. There the court said: "Mistake to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. The party complaining must have exercised at least the degree of diligence 'which may be fairly expected from a reasonable person' Kerr on Fraud and Mistake, 407." The party there complaining of mistake had bargained for a piece of land which was thought to contain gold but it turned out that the mining shaft which he believed was on that land was located elsewhere.

That case was followed in *Fraters G. & P. Co.* v. *Southwestern C. Co.*, 107 Cal.App. 1, 5, 6 [290 P. 45] (hearing denied) where the court said: "Courts of equity will not encourage the cancellation or revision of instruments on the ground of mistake where they appear to have been executed by the complainant without the exercise of reasonable care [citing 9 C.J. § 21, p. 1169; 4 R.C.L. § 20, p. 507, and *Grymes* v. *Sanders*] . . . In the absence of fraud, confidential relations or circumstances indicating excusable mistake, one will be presumed to know the meaning of unambiguous language and will be bound by the solemn execution of a written instrument. [citations]."

In *Placer County Bank* v. *Freeman*, 126 Cal. 90 [58 P. 388], the bank sued on a draft and the defendants resisted payment on the ground, *inter alia*, "That they signed the draft believing it to be a receipt only for the money." In reversing a judgment for the defendants the court (pp. 94-95) said:

"The real question in the case we think is: Should defendants, in view of all the undisputed facts, be permitted to avoid the consequences of their voluntary acts? Obviously, the loss in the transaction, by the plainest considerations of

justice, ought not to fall upon plaintiff, and we think the rules of law call upon us so to hold. The principle governing the case has been applied many times and under a great variety of circumstances. It is this: Where a person enters into an obligation with another upon an equal footing—i.e., where he does so free from any fraud practiced upon him, and not being under any undue influence, and there are no relations of confidence and trust, and the means of knowledge are equally open to both, and he executes the instrument without reading it or having it read to him, and without exercising the means of knowledge open to him—neither the courts of law nor courts of equity will relieve him from the effects of his folly. Judge Story, in his Equity Jurisprudence, section 200a, quotes the rule from Kent's Commentaries as follows: 'The common law affords to everyone reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information.' ''

On the subject of the failure of a party to read an instrument, or to read it correctly, it must be conceded that the authorities are by no means all one way. The court in *California Trust Co.* v. *Cohn*, 214 Cal. 619, 626, 627 [7 P.2d 297] in pointing this out says: ''The failure to read an instrument prior to its execution is an act to be explained and where the testimony sufficiently explains such failure it is removed from the case just as other acts of failure might be removed. (*Siem* v. *Cooper, supra* [79 Cal.App. 748 (250 P. 1106)].) There has always been a sharp struggle in the courts between the desire to repress fraud upon the one hand, and on the other to discourage negligence and the opportunity and invitation to commit perjury. *We are inclined to the view, therefore, that where the failure to familiarize one's self with the contents of a written contract prior to its execution is traceable solely to carelessness or negligence, reformation as a rule should be denied . . .*'' (Emphasis added.)

The cases just discussed deal with the failure of a person to read an instrument drawn by another, and with the burden of explanation of such failure. Appellant's burden of explanation was much heavier since, as the court has found, he drew and prepared the contract. The language therein, attributable to himself, is now claimed by him to have caused his mistake. It was appellant's own proposal, already signed by him, which was presented to respondent for acceptance or rejection.

If appellant's negligence had been induced by respondent's misrepresentation an entirely different problem would be presented (see *Security-First Nat. Bank* v. *Earp*, 19 Cal.2d 774, 777 [122 P.2d 900] and authorities there cited, including *California Trust Co.* v. *Cohn, supra*) but the court has found "That no representation of any kind or character was made by or on behalf of defendant . . . to plaintiff . . ."

An extensive annotation on the subject is found at 59 American Law Reports, pages 818-834, dealing with unilateral mistake.

We are satisfied that the finding that appellant prepared and drew the contract, brings the case within the rule stated in the Grymes, Cohn and Fraters cases, *supra*, and that, for the reasons given in those cases (see, also, § 1577, *supra*), he has not established a case of actionable mistake.

The language of section 1577, Civil Code itself shows that it is not any and every mistake that is remediable. When that section provides that "Mistake of fact is a mistake, not caused by the neglect of a legal duty . . ." it means by its very language, that a mistake which *is* so caused is *not a mistake of fact* within the meaning of the law.

A mistake of fact consists of "An unconscious ignorance or forgetfulness of a fact past or present, material to the contract" (§ 1577, *supra.*) Appellant was not ignorant of the fact that $5,000 plus $13,000 plus $42,000 accounted for the total purchase price. He was, apparently, unconscious or forgetful of the conclusion resulting from such computation, namely, that no purchase price would remain, against which unpaid rent (if any) could be offset.

When, in *Germain Fruit Co.* v. *Western Union Tel. Co.*, 137 Cal. 598 [70 P. 658, 59 L.R.A. 575], the telegram was garbled from "Santa Ana oranges, one fifty; Riversides, two sixty" to read Santa Ana oranges $1.50 Riversides $1.60, because the word "two" was dropped in transmittal, such omission was a clear mistake. If the contract in suit had been drawn so as to call, say, for a purchase price of $70,000 instead of $60,000, because of a mistake in transcribing, it would have been the same type of mistake. If, with knowledge that $60,000 was meant, respondent had signed, the rule illustrated by the Germain case would perhaps be applicable for, as Williston says, it would be "too good to be true." (1 Williston on Contracts (rev. ed.), § 94.) As the case stands, however, there was no such "mistake" here, and instead of falling within

the "snap up" rule the case seems to be squarely within the negligence rule applicable in cases where, on equitable principles (Philpott case, *supra*) relief is sought.

█ Appellant contends that the contract was void for uncertainty or unintelligibility.

In the first place, "The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained . . ." (*Roy* v. *Salisbury,* 21 Cal.2d 176, 184 [130 P.2d 706].)

Secondly, respondent is not seeking specific performance where the requirement of certainty is strict (see *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 164 [88 P.2d 698, 89 P.2d 386]).

Thirdly, the language is attributable to appellant (*Weil* v. *California Bank,* 219 Cal. 538, 541 [27 P.2d 904]) and "One who prepares a contract can by exactness of expression more readily prevent mistakes in meaning than one with whom he is dealing." (*Hunt* v. *United B. & T. Co.,* 210 Cal. 108, 116 [291 P. 184].)

The contract was primarily and essentially one for the purchase and sale of a piece of real estate for $60,000. "The requirements of a contract for the sale of real property have been definitely established and are that the memorandum of the agreement shall within itself show who is the seller and who is the buyer, what the price is and when it is to be paid, together with a description of the land so that it may be identified . . ." (*O'Donnell* v. *Lutter,* 68 Cal.App.2d 376, 381 [156 P.2d 958]). There was no uncertainty as to any of these essential elements.

*Talmadge* v. *Arrowhead R. Co.,* 101 Cal. 367 [35 P. 1000], relied on by appellant, turned simply on the fact that the negotiators were never *ad item* as to *price.* That case did not deal with an ambiguous contract, but with an inchoate instrument (*Caldwell* v. *Western Dev. Co.,* 54 Cal.App. 776, 782 [203 P. 158]). The same may be said for *Los Angeles etc. Co.* v. *Phillips,* 56 Cal. 539 and *Breckenridge* v. *Crocker,* 78 Cal. 529 [21 P. 179], both cited in the Arrowhead case. In none of the three cases did a contract come into existence.

There is no merit in this point.

█ In dealing with the subject of the materiality of the provision for the security of the lease appellant points out in his brief that "respondent cites no case in which it has been held that such security is not a matter of material im-

portance." It is not respondent's burden to establish a negative. Appellant was the actor in the trial court and, as appears earlier, his "right to recover is governed by principles of equity, although the action is one at law." (Philpott case, *supra*.) It was appellant's burden to prove such type of mistake as is cognizable in a court of equity, not merely a mistake affecting "some 'collateral' though material matter, constituting merely a matter of inducement." (6 Cal.Jur. 79.) It was incumbent on appellant to convince both the trial court, and this court that his case is not within the rule stated in 6 California Jurisprudence, page 79, which seems to be the rule elsewhere, on the subject. He has cited no authorities whatever on the point. In this connection the court in *Grymes* v. *Sanders, supra,* said: "A mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved [citations]."

Appellant did not sustain his burden in this respect.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.