[No. 26182. *En Banc.* October 29, 1936.]

CLARENCE L. HILTON *et al., Appellants,* v. TRACY DeLONG *et al., Respondents.*[1]

*E. A. Cornelius,* for appellants.

*Ralph E. Foley* and *A. O. Colburn,* for respondents.

GERAGHTY, J.—Tracy DeLong and Mary Ann De-Long, his wife, were the owners of a tract of land, some seventy-five acres, in Spokane county. They lived on the land, on which was a dwelling house and some other improvements.

In 1931, Spokane county foreclosed its tax lien on the property for several years' delinquency, and a tax

[1]Reported in 61 P. (2d) 1290.

deed was issued to the county. The DeLongs, how-
ever, continued to occupy the premises and were re-
siding thereon at the time of the institution of the
present suit. In 1931, after title had passed to the
county, the DeLongs had some informal arrangement
with the county commissioners by which they were to
occupy the premises, and the sum of ninety-four
dollars was paid to the county, either as rental or for
the purpose of accumulating a fund with which to re-
purchase the land. No payment was made after the
year 1932.

In the early part of 1935, R. J. Hilton, desiring to
purchase a parcel of tax title property held by the
county and adjoining land owned by him, called at the
office of the county commissioners to have the parcel
put up for sale by the county treasurer. In the course
of his interview at the office of the county commis-
sioners, he learned that there were other parcels of
tax title land in the same township, but some distance
from his own land, and he suggested to the commis-
sioners that he would bid the minimum price of $1.25
per acre for all of these parcels if they were put up
for sale. The DeLong property was included in the
thirteen parcels for which Hilton agreed to bid.

A resolution was accordingly passed by the board of
county commissioners on February 18, 1935, directing
the county treasurer to sell the property described in
the resolution, for cash or upon a contract of pur-
chase, to the best bidder in the manner prescribed by
law, and to issue a deed therefor to the purchaser. In
addition to the parcels requested to be offered, many
other parcels were included in the resolution. Op-
posite the description of each parcel, there was set
down its appraised value, in accordance with the statu-
tory requirement.

A sale was subsequently had by the county treasurer,

at which Clarence L. Hilton, appellant here, son of R. J. Hilton, purchased the DeLong property for ninety-four dollars, the appraised value. R. J. Hilton, the father, purchased the other twelve tracts that he had requested to be offered for sale. A deed was issued to Clarence L. Hilton on March 23, 1935.

It is conceded that both the original tax foreclosure and the subsequent sale by the county were regularly conducted and all notices required by statute given.

There is included in the record an informal lease signed by Mrs. Mary DeLong, in whom the title was vested before the tax sale, to George Jensen, by the terms of which Jensen was to have the use of all the land in controversy, except the part occupied by buildings and garden, for the term of three years. As a rental, he agreed to pay two quarts of milk a day or its equivalent. The lease, which bears date of March 8, 1935, was approved by the three county commissioners.

After purchasing the land from the county, the appellants Hilton, finding the DeLongs in possession under some claim of right, instituted this action to have title quieted. After the appearance of the De-Longs, the trial court required that Spokane county be brought into the suit as party defendant.

In their answer, the DeLongs alleged affirmatively the possession and occupancy of the premises since September 4, 1931, on which day they had entered into a verbal agreement with the county commissioners to repurchase the premises and had paid on account of the purchase price, up to May 16, 1932, the sum of ninety-four dollars. They alleged that the sale of the property by Spokane county was a mistake and oversight on the part of the county commissioners, caused by the failure of the appellants to call to their attention the actual occupancy of the premises by the DeLongs under an agreement with Spokane county.

The county's answer set up, by way of affirmative defense and cross-complaint, its ownership in fee of the property, which had been acquired by regular tax foreclosure. It was alleged that the land, which was of low grade, part tillable and part pasture, had been occupied since foreclosure by the respondents DeLong at sufferance of the county; that, on or about February 18, 1935, R. J. Hilton called at the office of the board of county commissioners and informed the clerk of the board that he was interested in purchasing certain pieces of nontillable and unimproved property of low grade in section 4, township 24, range 42, in Spokane county, and indicated the property described in the complaint and also other parcels in the vicinity as those he wished to purchase; that he stated to the clerk that he personally had inspected the property and that it was all unimproved and nontillable; that, relying on this representation, the clerk informed him that the standard price on such land on resale was $1.25 per acre, and that he would inform the county commissioners of Hilton's offer and proceed with the sale in the usual manner if it was agreeable to them.

It was alleged that, on September 4, 1931, the county commissioners had made an agreement with the De-Longs by which they were to remain in possession and occupancy of the property on a rental basis, and all sums paid as rent would be credited on the purchase price whenever they were in a financial position to pay the price demanded; that, pursuant to this agreement, some payments were made from time to time up to and including May 16, 1932, totaling in amount ninety-four dollars; that thereafter DeLong and wife ceased making any payments because of their financial inability to do so, and DeLong and wife then appealed to Spokane county for indigent relief, claiming inability to support themselves; that, because of the in-

ability of DeLong and wife, the commissioners permitted them to remain in occupancy of the premises and agreed not to sell the premises or allow them to be resold; that, in furtherance of their purpose to keep DeLong and wife off the relief rolls, Spokane county agreed in writing to approve the lease from them to one George Jensen, by the terms of which Jensen was to permit the DeLongs to live in the house and give them an additional two quarts of milk a day; that, through the mistake of the clerk of the board of county commissioners and of the county treasurer, they did not realize that the plaintiff's request for the sale of certain lands included the land of the defendants, and that, erroneously and through this mistake and oversight, they permitted the sale to go through in the usual manner, and as a result thereof the plaintiffs procured a deed for the sum of ninety-four dollars from the county treasurer to the premises.

It was alleged that the deed was procured through false representation, mistake, and oversight, as before alleged; that the price was grossly inadequate; and the county consented to have the court award judgment to the plaintiffs in the sum of ninety-four dollars and interest, the amount paid by them for the land in controversy, on condition that the court cancel and set aside the deed covering the property purchased by the plaintiffs.

The trial court made the following findings, material to the issue:

"(2) On said date said property above described was regularly conveyed to the plaintiffs through resale proceedings by Spokane county of real estate acquired by tax foreclosure, and the consideration for said deed was the sum of $94, so far as the property above described was concerned, or the sum of $1.25 per acre.

"(3) At said time and ever since said property was

improved with buildings consisting of a house, chicken sheds, two wells and other incidental farm buildings, and thirty acres of said property was tillable land and of the reasonable value of $1,250.

"(4) At said time and immediately prior thereto and subsequent thereto said place was occupied under agreement with the board of county commissioners of Spokane county by its former owners, Tracy DeLong and Mary Ann DeLong, who were during all of said time actually residing in person upon said premises.

"(5) Through an oversight of the clerk of the board of county commissioners of Spokane county a resale of said property was directed, said clerk assuming that said property was unimproved, raw land and not actually knowing that the commissioners had made an oral agreement to hold the property for repurchase by the defendants DeLong and wife, and that said resale was a mistake.

"(6) The court further finds that the difference between the actual value of said property and the amount paid therefor by the plaintiffs is so great that it amounts to constructive fraud."

Upon these findings, judgment was entered canceling the deed to appellants and requiring the return by the county of the purchase price to them with interest and costs.

It will be noted that, while this action was brought against the respondents DeLong, they were given no specific relief by the judgment. Indeed, they could be given no relief on any tenable ground. Their property had been regularly foreclosed and sold for taxes by the county, and while they were permitted to occupy the premises, it was only at sufferance. Whatever may have been the arrangement between them and the county, it was not of record so as to charge a purchaser with notice, and was beyond the power of the county commissioners to make.

We must, therefore, consider the controversy in this case as one between the county and a purchaser from

it in good faith. We say a purchaser in good faith because there is nothing in the record sustaining any charge of collusion, misinformation, or bad faith on the part of appellant Clarence L. Hilton, or his father, who requested that the property be put up for sale. It will be noted that the court did not find any misrepresentation.

The testimony of the clerk of the board of county commissioners in relation to what took place at the office of the board is in part as follows:

"Q. Tell the Court in your own words just how this deal came up with Mr. Hilton. Just tell us how that came about and what was said by you and by Mr. Hilton? A. Well, that is pretty hazy now, but anyway, Mr. Hilton came in and proposed that he buy some land. I searched the record and finally found the land on our books, and got a very involved chart here showing all the little pieces and it was badly cut up, and we finally got all the stuff together and Mr. Hilton proposed to buy it. I, or the office, general office, the counter not knowing anything about any of the details out there, we assembled all this stuff. They had one piece .22 of an acre. Here is one 74.09 acres. . . . So I, not knowing anything about it, we applied the office or counter rule of $1.25 an acre, and we went ahead and sold it to him on the assumption that it was just routine stuff . . . MR. COLBURN: (Q) Did Mr. Hilton tell you anything about this property? A. I am going to tell the Court about Mr. Hilton's conversation as much as I can remember. He wanted to buy this property because, as I recall it, he said it didn't amount to much, but if he could get all these pieces together he might consider buying it, and the general impression I got was that it was just routine stuff, some cats and dogs out there that might be all together and thrown into an entity, and might be worth $1.25 an acre if he could get it that way. THE COURT: (Q) What did he say about having knowledge of the land? A. I can't recall that, your Honor, except that he may have said to me and very probably did, that he had looked it over—MR. CORNELIUS: If you

don't remember, I object to the statement. . . .
Q. Did Mr. Hilton tell you what he wanted it for?
A. He did not. Q. Was anything said between you
about whether it was improved or unimproved? A.
It was not.''

While the clerk of the board spoke as if the commissioners were negotiating the sale, this is not, of course, a correct statement of the transaction. The sale is required to be made by the county treasurer at public auction to the highest bidder. The duty of the county commissioners is to direct the treasurer to sell the property and to fix its appraised value. It appears to have been the practice in the commissioners' office to require that a prospective purchaser agree to make a minimum bid of presumably the appraised value so that the expense of an abortive sale would be avoided.

The property was purchased from the county treasurer on open, competitive bidding. Considerable time elapsed between the passing of the resolution by the commissioners and the actual sale, during which they could have informed themselves of the character of the land. That they did not do so, having all the information at hand, is a neglect of duty not chargeable to the appellants.

In the last analysis, the only thing in the record suggesting any tenable ground for avoiding the sale is the disproportion of the price as compared with the value found by the court, and this seems to be the principal ground upon which the judgment was based. But we have uniformly held that mere inadequacy of price is not a valid objection to a tax sale.

''If mere inadequacy of price is held to be a valid objection to a sale for taxes, the collection of taxes in this manner would be greatly embarrassed, if not rendered altogether impracticable. In Black on Tax Titles (2d ed.) § 238, the correct rule is stated as follows:

" 'Where land is sold for taxes, the inadequacy of the price given is not a valid objection to the sale. This rule arises from necessity; for if a fair price for the land were an essential to the sale, it would be useless to offer the property. Indeed, it is notorious that the prices habitually paid by purchasers at tax sales are grossly out of proportion to the value of the land.' " *Rothchild Bros. v. Rollinger,* 32 Wash. 307, 73 Pac. 367.

Of the case before us, it may be said, in the language of *McGuire v. Bean,* 151 Wash. 474, 276 Pac. 555:

"Like most cases of this character, there is here a certain element of hardship from which we would be glad to relieve, but to do so would unsettle long established rules and lead to uncertainty and difficulty in the collection of taxes which are the life blood of the state. We are convinced that the present rules are just and that they bring hardship only to those who have invited it by their own neglect."

"It is unfortunate that respondents have been deprived of property worth $1,800 because of their failure to pay taxes thereon amounting to about one-tenth of that sum, but their own negligence caused their loss, and our attention is called to no defects in the tax foreclosure proceeding which are of a nature so serious as to affect the jurisdiction of the court to enter the judgment of foreclosure." *Colby v. Himes,* 171 Wash. 83, 17 P. (2d) 606.

It has been said that hard cases make bad law. If, here, we were to upset a sale regularly made because the county officers charged with the sale of its land had been neglectful, we would be announcing a bad rule of law and planting dragons' teeth that would hereafter spring up to plague and embarrass the counties by unsettling their tax titles—too great a price to pay for the small advantage the county would gain by repudiating its act in the present instance.

While not embodied in its formal findings, the trial court's oral opinion implied that the transaction

was voidable for mutual mistake. There was no mutuality in the mistake, if mistake there was. The purchaser was not mistaken. If the county officers made a mistake, it was not one for which the sale can be voided. They made a mistake only in the sense that they failed in the measure of care required of them under the circumstances.

The judgment is reversed, and the cause remanded with direction to enter judgment quieting title as prayed for.

ALL CONCUR.