[No. 32495. Department One. November 10, 1953.]

ROBERT G. FARRELL *et al.*, *Appellants*, v. ROSS NEILSON, *as Treasurer of Pacific County, et al.*, *Respondents.*[1]

[1]Reported in 263 P. (2d) 264.

*Fred M. Bond*, for appellants.

*Stark & Hill* and *James E. Duree*, for respondents.

OLSON, J.—This action was brought to set aside a public sale by Pacific county of certain real estate acquired by the county by foreclosure of delinquent taxes.

The propriety and legality of the proceedings of the county commissioners and county treasurer preceding the sale are not in issue.

The trial court found that defendant county treasurer conducted the sale in accordance with the order of the commissioners; that defendant copartnership, Latimer & Son, whom we will designate as Latimer, made a bid for the property (the amount was the minimum sale price for the land established by the county commissioners); that this was the sole bid received by the county treasurer; that the property was sold to Latimer on this bid, and that the sale was regular in all respects. It entered judgment dismissing the action, and plaintiffs have appealed.

Plaintiffs assert that the findings of the trial court were erroneous, in that it should have found that they were the highest and best bidders at the sale.

The evidence on this issue was in conflict. The sale was made at public auction, at which the property in question was the first of several tracts of land sold. After the Latimer bid was made, the treasurer said: "The minimum price once, twice, and three times. Sold." Mr. Farrell, the plaintiff who claims to have bid more than the minimum price, testified that his bid was made after the treasurer said, "twice," and before he said, "sold." But he also testified that he did not know whether or not the treasurer heard his bid. Both the treasurer and his bookkeeper, who acted as clerk at the sale, and many disinterested witnesses who stood near the treasurer, testified that they did not hear it.

There was no evidence of extreme speed in the conduct of the sale. In fact, there was testimony that there was ample time to have made another bid, after the Latimer bid was made and before the treasurer announced that the property was sold. From the description of the scene of the auction, the number of people in attendance, Mr. Farrell's distance from the treasurer, and the conversational or low tone of voice he testified he used in bidding, we conclude, as did the trial court, that his bid, if made, was not heard by the treasurer. Nor can it be said that he should have heard it.

There is no evidence of fraud, collusion, or bad faith on the part of the treasurer or of the successful bidder.

■■ It is well settled that an attack upon the findings of fact of the trial court, made upon conflicting evidence, cannot be successful on an appeal unless it can be shown that the evidence preponderates against the finding. Plaintiffs have failed to meet this requirement. Consequently, we accept the findings as the established facts of the case. *Corbett v. Ticktin, ante* p. 248, 254, 260 P. (2d) 895 (1953), and case cited. Actually, in this case, as we have indicated, our examination of the record discloses that the findings are supported by a preponderance of the evidence.

■ Our statutes provide that land acquired by the county for taxes shall be sold to the "highest and best bidder" (RCW 84.64.280 [*cf.* Rem. Supp. 1945, § 11294]), and that "The person making the highest bid shall become the purchaser of the property" (RCW 84.64.290 [*cf.* Rem. Supp. 1945, § 11294]). The minimum sale price is established by the county commissioners. When the property is called for sale and the minimum price is bid, that bid is an offer to purchase by the bidder which can be accepted by the treasurer. When there are no other bids, and the hammer falls, or, as here, the word, "sold," is pronounced by the treasurer, as auctioneer, a contract of sale results. 1 Restatement, Contracts, 34, § 27; 2 Williston on Sales (Rev. ed.) 200, § 296; 11 A. L. R. 545.

■ A tax sale creates a contract between the county and the bidder upon terms found in the cited statutes gov-

erning tax sales. *Anderson v. King County*, 200 Wash. 354, 364, 93 P. (2d) 284 (1939). Also see *McPherson Brothers Co. v. Okanogan County*, 45 Wash. 285, 88 Pac. 199 (1907), in which, although the bid was rejected by the auctioneer, the ordinary rules regarding auctions are discussed in connection with tax sales. 16 McQuillin, Municipal Corporations (3d ed.) 413, § 44.158.

█ An offer must be communicated to an offeree, if it is to be the basis of a contract. 1 Restatement, Contracts, 28, 59, §§ 23, 53, comment a. Plaintiffs' offer or bid was not communicated to the treasurer before the property was sold to Latimer. Consequently, it could not have been accepted, and cannot be the basis of a contract of purchase.

The contract between Latimer and the county is valid, and it must be sustained, unless plaintiffs' further argument is sound. They contend that the county takes and holds land acquired at a general tax foreclosure sale, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. *State ex rel. King County Water Dist. v. Stacy*, 10 Wn. (2d) 248, 254, 116 P. (2d) 356 (1941). They argue that, because of the described trust under which the county held the property, it was the duty of the treasurer to obtain the best price possible at the sale, and that, when Mr. Farrell told him, immediately after the sale to Latimer, that plaintiffs were willing to bid more than the minimum price, he should have set aside the Latimer sale and reoffered the property for sale.

██ Such action by the treasurer would have involved a repudiation of the valid contract between the county and Latimer. The treasurer had no authority to take such action. His duties and powers are fixed by statute. The resale of tax-title property by the county is but a part of the statutory tax collecting process. *Sasse v. King County*, 196 Wash. 242, 249, 82 P. (2d) 536 (1938).

No ground upon which the court can act, such as mistake, fraud, or bad faith on the part of the county treasurer or the successful bidder, is shown in this case. If we were to act arbitrarily in this instance to upset a sale regularly made,

we would unsettle well-established rules, make tax titles uncertain, and render the tax collecting process more difficult. The disadvantages of such action, even if it be assumed to be within the powers of the court, exceed any possible advantages to be gained from repudiation. See for analogy *Hilton v. DeLong*, 188 Wash. 162, 170, 61 P. (2d) 1290 (1936), and cases there cited, and cases cited in note 7, 152 A. L. R. 891.

We have considered plaintiffs' other assignments of error, and find them without merit. Our disposition of the case makes it unnecessary for us to resolve any doubt about plaintiffs' capacity to bring this action, by considering whether or not their demand upon the prosecuting attorney that he bring it and his refusal to do so, as alleged in the amended complaint, were timely.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.