[No. 27512. Department Two. August 29, 1939.]

HARRY ANDERSON, *Appellant*, v. KING COUNTY *et al.,*
*Respondents.*[1]

*Hare, Turner & Maurier,* for appellant.

*B. Gray Warner* and *F. M. Reischling,* for respondents.

MILLARD, J.—This action was brought by a bidder to recover partial payment made by him at a tax sale for real property, and to recover amount of profit he would have made through sale of the property to a third person if the county had not destroyed the improvement on the land prior to the tax sale. The appeal is prosecuted by the plaintiff as from a judgment of dismissal, rendered upon the plaintiff's refusal to plead

[1]Reported in 93 P. (2d) 284.

further after a demurrer was sustained to his complaint.

The complaint, the allegations of fact therein being admitted by the demurrer to be true, is summarized as follows:

Lots 1 and 2, block 1, Glen Park Addition to the city of Seattle, were improved with "a residential building of substantial value." From 1926 to 1936 inclusive, King county assessed that land and improvement separately and levied a tax on the aggregate value of the land and improvement as provided by law. The assessed value for the year 1926 was $846 for the land and $440 for the improvement, an aggregate assessed value of $1,280 for the two lots and improvement thereon. There was some variation in the assessed valuations from year to year subsequently, but in none of the years 1926 to 1935 was the assessed valuation of the building less than twenty-eight per cent of the aggregate, and the average assessed value of the improvement for the ten-year period was in excess of thirty-one per cent of the aggregate assessed value of the property.

On August 2, 1937, the taxes for the years 1926 and 1929 being unpaid, the county foreclosed its tax lien and acquired title to the property. On or about October 15, 1937, appellant applied to the property agent of King county to purchase the property in question at public auction. In that application, which was approved October 18, 1937, by the board of commissioners of King county, appellant agreed to bid $665 for the property. He made a payment of ten dollars to apply on the purchase price of the property to cover the cost of publication of notice of the sale, which amount was to be credited against the purchase price of the property if appellant was the successful bidder

at the auction sale. The application to purchase the property reads as follows:

"No. 3358

"Application For Sale and Receipt For Earnest Money

"Seattle, Washington, Oct. 15, 1937

"Received from Harry Anderson hereinafter called the purchaser, Ten and No/100..............Dollars, to apply on the purchase price of the following described property of King county:

| Description | Section or Lot | Township or Block | Range | Bid |
|---|---|---|---|---|
| Glen Park Add. Plus Adv. Costs | S ½ of 1 & 2 | 1 | | $665.00 |

"It is agreed that said property will be advertised for sale at public auction as provided by law and purchaser hereby bids therefor the sum of not less. than $665.00, subject to outstanding Assessments, if any.

"It is further agreed that if purchaser shall be the highest bidder at such auction sale, then within 30 days after such sale said purchaser shall pay to the County Treasurer of King County the difference between the sum herein receipted for and the amount of said purchaser's highest bid at such sale, and thereupon a deed to said property shall be issued to said purchaser. Should purchaser fail to make full payment within 30 days as above provided the sum of money herein receipted for shall be forfeited as liquidated damages to King County. In case purchaser shall not be the highest bidder at such sale his deposit shall be refunded to him.

"If property is bought on contract 20 % of the Purchase Price Must be Deposited with the County Treasurer on Date of Sale.

"It is further agreed that in the event the Board of County Commissioners fails to approve the terms of this agreement and order said property advertised for sale as above provided, purchaser's deposit shall be refunded to him without further liability.

"Executed in quadruplicate this 15th day of October, 1937.

"JOHN P. ANGEL
Property Agent for King County
"HARRY ANDERSON
Purchaser."

Appellant and the officers and agents of King county knew that the real property was improved with a dwelling house at the time appellant made the application to buy the property. [The property is described in the application as the south half of lots 1 and 2, *sans* any statement as to improvement.] Statutory publication of notice of sale was made by the county, and November 13, 1937, was designated as the date of the auction when the property would be offered for sale. Subsequent to October 15, 1937 [date of appellant's application to purchase the property], and November 13, 1937 [date of sale of the property], the building on the property in question was destroyed by employees of King county. Neither at the time of the sale of the property or previous thereto was notice given by King county to Anderson of the destruction of the house.

On November 13, 1937, appellant's bid of $665 for the property was accepted by the county treasurer, to whom appellant paid an additional sum of forty dollars on the purchase price. At the time of the sale, appellant believed that the building was still on the premises, and it was not until subsequent to acceptance of his bid and payment of the additional sum of forty dollars that he learned of the destruction of the house. All proceedings of the county and its officers and agents relating to the tax foreclosure, sale, and resale were regular and in accordance with law.

After execution and approval of appellant's application of October 15, 1937, to purchase the property, and prior to the acceptance of appellant's bid at the auction

sale of November 13, 1937, appellant entered into an agreement with a third person to sell the property to that third person at the price of seventeen hundred dollars, contingent on appellant's acquisition of title to the property. Because of the removal of the house from the property, appellant cannot now require his purchaser to proceed with the sale. Because the county is unable to deliver the property with the improvement thereon, appellant refused to proceed further or to pay the balance of his bid.

Appellant alleges that he has sustained damage, for which he prays recovery, in the amount of $1,035, representing loss of profit under contemplated resale of the property and fifty dollars representing payment to the county on the application to purchase and payment at the time of the acceptance of his bid on November 13, 1937.

The statute governing the resale of tax title property by counties reads as follows:

"Real property hereafter or heretofore acquired by the several counties of the State of Washington for taxes shall be subject to sale by order of the board of county commissioners of the several counties of this state at any time after the counties shall have received a deed therefor, when in the judgment of the board of county commissioners they deem it for the best interests of the county to sell the same. When the board of county commissioners desires to sell any property so acquired, it may, if deemed advantageous to the county, combine any or all of the several lots and tracts of land so to be sold in one or more units, and it shall then enter an order on its records fixing the unit or units in which the property shall be sold and the minimum price for each of such units, and directing the county treasurer to sell such property in the unit or units and at not less than the price or prices so fixed by said board: *Provided,* That the said order shall be subject to the approval of the county treasurer if several lots or tracts of land are combined in one unit. It shall be

the duty of the county treasurer upon receipt of such order to publish once a week for three consecutive weeks a notice of the sale of such property in a newspaper printed and published in the county where the land is situated: *Provided,* That in counties where there is no newspaper published, the treasurer of such county shall cause such notice to be published in some newspaper in the state of general circulation in such county having no resident newspaper, and the property to be sold shall be set forth and described in said notice, and the minimum price fixed in said order, together with the time and place and terms of sale, which said sale shall be made at the front door of the county courthouse in the county in which the land is situated between the hours of 9 o'clock a. m. and 4 o'clock p. m., and all sales so made shall be to the highest and best bidder at such sale, and sales to be made under the provisions of this act may be adjourned from day to day by the county treasurer by public announcement made by the treasurer at the time and place designated in the notice of such sale, or at the time and place to which said sale may be adjourned. The person making the bid shall state whether he will pay cash for the amount of his bid or accept a real estate contract of purchase in accordance with the provisions hereinafter contained. The person making the highest bid shall become the purchaser of said property. If the highest bidder is a contract bidder the purchaser shall be required to pay twenty per cent of the total purchase price at the time of said sale and shall enter into a contract with the county as vendor and the purchaser as vendee which shall obligate and require the purchaser to pay the balance of said purchase price in ten equal annual installments commencing November 1st and each year following the date of said sale, and shall require said purchaser to pay six per cent interest on all deferred payments, interest to be paid at the time the annual installment is due; and may contain a provision authorizing the purchaser to make payment in full at any time of any balance due on the total purchase price plus accrued interest on such balance. Said contract shall contain a provision requiring the purchaser to pay before delinquency all subsequent

taxes and assessments that may be levied or assessed against said property subsequent to the date of said contract, and shall contain a provision that time is of the essence of the contract and that in event of a failure of the vendee to make payments at the time and in the manner required and to keep and perform the covenants and conditions therein required of him that the said contract may be forfeited and terminated at the election of the vendor, and that in event of said election all sums theretofore paid by the vendee shall be forfeited as liquidated damages for failure to comply with the provisions of said contract; and shall require the vendor to execute and deliver to the vendee a deed of conveyance covering said property upon the payment in full of the purchase price, plus accrued interest." Laws of 1937, chapter 68, p. 233, § 1, Rem. Rev. Stat. (Sup.), § 11294 [P. C. § 6882-133].

Counsel for appellant concede that, in the absence of a statute providing for repayment of the purchase price, the rule of *caveat emptor* precludes recovery from the county by the purchaser at a tax sale of the purchase price where the title fails because of any defect in the proceeding leading up to the sale, or failure of title passing to the grantee by the deed. *Shelton v. Klickitat County*, 152 Wash. 193, 277 Pac. 839. However, counsel for appellant argue, if the county, before acceptance of appellant's application for resale of the property, had destroyed the house thereon and noted on the public records the changed condition in the property, the rule would be applicable; but if such change occurred with no public record thereof and the county proceeded as if the property were in the same condition as when application was made to purchase, the rule of *caveat emptor* may not avail as a defense in an action to recover the purchase price or damages sustained as alleged in the case at bar. That is, appellant bid on tax title property which was sold November 13, 1937, pursuant to the statute

(Laws of 1937, chapter 68, p. 233, § 1, Rem. Rev. Stat. (Sup.), § 11294), but that property, which appellant knew was improved with a dwelling house thereon prior to the sale, was not improved property at the time he made his bid, which was accepted; therefore, having accepted (with knowledge that the property was improved) his application of October 15, 1937, to purchase the property with the improvement thereon, the county must respond in damages for breach of its statutory duty to deliver what it had undertaken to sell.

Our holding in *Shelton v. Klickitat County*, 152 Wash. 193, 277 Pac. 839, that the purchaser at resale from the county, who acquired no title as a result of the sale being void, could not recover the purchase price from the county, is in accord with the general rule that, unless aided by express statutory authority, the holder of an invalid tax title is not entitled to recover back his money against the county or state from whom the purchase was made. See, also, *Hilton v. DeLong*, 188 Wash. 162, 61 P. (2d) 1290.

The rule apparently is absolute that, where a statute provides for the reimbursement of purchasers at invalid tax sales, there can be no recovery under circumstances not within the terms of the statute. 61 C. J. 1467-1468, § 2076. In discussing the question whether the rule denying recovery should apply where property is not subject to the tax for which it is sold, the editor of the annotation commencing at page 829 of Vol. 77 A. L. R., observes that "no decision has been found which rests upon such a distinction."

In *Parrott v. Abernathy*, 58 S. D. 603, 237 N. W. 900, 77 A. L. R. 818, it was held that, where land had been invalidly attached to a school district so that the school tax thereon was invalid notwithstanding the regularity of the tax proceeding, although the premises had been

bid in by the county treasurer for the county with knowledge that the validity of the school tax was challenged and in litigation, an innocent purchaser of the certificate was not entitled to recover from the county the amount of the school tax. The rule of *caveat emptor,* said the court, applied even though the invalidity of the tax was not disclosed by the tax proceeding; especially as a statute existed permitting tax purchasers to be reimbursed in certain cases and the statute made no provision for such a case as that before the court. The court said:

" 'It should be kept in mind that the rules which apply to actions to recover back money paid by one person to another do not apply, to their full extent, to actions to recover back from a county, town, or other municipality money in payment of taxes illegally or irregularly assessed or levied. There are certain considerations of public policy which must necessarily be taken into consideration. If a party could recover back from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy'."

In Minnesota, under a statute which states the instances in which a purchaser may obtain a refund of the purchase money, where a sale is invalid because lands previously bid in by the state were included, the purchaser was held not entitled to a refund, because that fact did not constitute one of the instances specified by the statute. *Wellcome Co. v. Marshall County,* 174 Minn. 431, 219 N. W. 545.

In *Levy Bros. v. Board of Commissioners,* 101 Okla. 241, 225 Pac. 387, it was held that money paid by a purchaser at a tax sale for taxable real property regularly assessed can not be recovered merely for the

reason that the property was listed as improved, when, as a matter of fact, it was vacant. In the course of the opinion, the court said that the purchasers paid too much,

". . . but all sources of information were open to them as well as to the county officials. They failed to avail themselves of such sources. . . .

"The county is not a warrantor of the accuracy of an assessment list as to value, nor does it guarantee correct action on the part of its officers. Cooley on Taxation (3rd Ed.) page 1493. The purchasers of this certificate were under no obligation to buy . . . They were volunteers investing their money in such securities as they believed would return them 18 per cent. per annum, or a tax deed. . . . There is nothing in the agreed statement to show that the error was made by any county officer, but even in that event plaintiffs could not recover. . . .

"There are no decisions, so far as our investigation goes, that present an exact parallel. A near approach is the case of *Lindsey v. Boone County*, 92 Iowa, 86. This was a suit by a purchaser of tax sale certificate because of an alleged erroneous description of property in that the lot was apparently listed under a questionable ownership and the description was doubtful. The certificate purchaser paid subsequent taxes on the real property and also delinquent personal taxes of the owner, which were a lien on the realty under the Iowa statute. Iowa has statutes similar in effect to ours, but the court held plaintiffs could not recover. In concluding the court said:

" 'The conclusion reached in this case is not a hard one. It results from the application of well-established rules of law. A purchaser at tax sale must beware. The description of the premises is open to his inspection, and he buys just such as the county offers to give. If it is not sufficient to carry the title, he need not buy. So, with reference to the subsequent taxes, he has the right to pay them, but is not compelled to do so. If he does, the payment is voluntary, and no action will lie to recover them back. The subsequent taxes were not

paid through a mistake, nor was there any fraud in the transaction'."

. The property was not listed as improved. The application, upon which appellant relies, describes the property as the south half of lots 1 and 2 of block 1, Glen Park Addition. The fact that the appellant knew, and the fact that the county officials knew, that a house was on the lots at the time appellant made application to purchase the property pursuant to the statute, are not determinative factors. While the records would not have disclosed that the house had been removed, appellant is not entitled, because of his prior knowledge of a house having been on the property October 15, 1937, to a position other than that which would obtain in the case of other purchasers.

When, on October 15, 1937, appellant agreed to bid on the property at the sale to be held approximately one month later, he did not thereby acquire a right different than that of any other bidder who appeared for the first time when the property was offered at auction. If such bidder failed to inspect the land at the time and discover the absence of a house which he understood, or knew, was formerly on the land, he could not successfully maintain an action to recover the purchase price or the down payment made by him. If he had inspected the land at that time, he would have learned that it was not improved. The appellant did not, by his application of October 15, 1937, purchase, nor did he obtain an option to purchase, the land prior to the removal of the house therefrom. The tax sale of November 13, 1937, created a contract between the county and the appellant. The terms of that contract will be found in the statute (Rem. Rev. Stat. (Sup.), § 11294) governing tax sales.

The doctrine of *caveat emptor* applies with full force to a tax sale like that in the case at bar. We are not

aware of any rule or statute which required the county to maintain the land in question in the same condition it was when the county acquired it, nor has our attention been directed to any statute requiring the county to maintain the land in the same condition from the date of the application for its purchase until the date of the sale. The deposit of ten dollars at the time the application was made assured the county of payment of the cost of advertising the property for sale. No option was thereby acquired by appellant to purchase the property. No duty was incumbent on the county to continue the building on the land for the benefit of the successful bidder.

The judgment is affirmed.

BLAKE, C. J., SIMPSON, ROBINSON, and GERAGHTY, JJ., concur.