[Civ. No. 19663.   Second Dist., Div. Three.   Dec. 3, 1953.]

A. J. MESMER, Respondent, v. MARIE WHITE, Appellant.

Byron R. Bentley for Appellant.

Hammack & Hammack for Respondent.

SHINN, P. J.—Plaintiff A. J. Mesmer is the surviving husband of Grace Mesmer, deceased, and defendant Marie White is her sister. Grace died May 17, 1951, leaving a will dated January 7, 1932, in which she bequeathed all her "worldly possessions" to Marie. On May 21, 1951, Mrs. Mesmer's safe deposit box was opened in the presence of a deputy county treasurer, bank officials, Mrs. White, her counsel Mr. Bentley, and Mr. Mesmer. Mr. Bentley made a list of the contents of the box. In the box, but not listed by the deputy county treasurer or Mr. Bentley, was a carbon copy of a letter addressed to Grace Mesmer, dated December 10, 1939, signed "Father," which stated, in part: "Mother and I are inclosing the following stock certificates: Joseph

Mesmer Company, Cert. #70, Class B. Preferred, 6 Shares;
Joseph Mesmer Company, Cert. #75, Class B. Preferred, 7
Shares. We intended to give you these stocks at Christmas
time, but the transfer was delayed. . . ." Joseph Mesmer,
now deceased, was plaintiff's father. The described certificates
were in the possession of plaintiff. In the box was a note
for $3,000, payable to Grace Mesmer, signed by Joseph Mesmer
Company. At that time there was standing in the name of
Grace Mesmer a residence at 5505 Ocean Front, Playa del
Rey, California, which residence was fully furnished, and
she also owned several pieces of jewelry. Several conversa-
tions took place between plaintiff and defendant with respect
to the disposition of the property of the estate of Grace.
These resulted in the preparation by Mr. Bentley, acting
for defendant, of a proposed agreement between the parties
which was signed by Mrs. White and forwarded to Mr. Mes-
mer's attorney. This writing did not mention any interest
of Grace Mesmer in the Joseph Mesmer Company, but it
provided: "/s/id A. J. Mesmer waives and relinquishes any
rights to and makes no claim to any property standing in
the name of Grace Mesmer and acknowledges the same to
have been the separate property of said Grace Mesmer which
she was entitled to dispose of by will and which she did leave
to said Marie White." Upon receipt of this writing Mr.
Hammack, plaintiff's attorney, returned to Mr. Bentley the
proposed agreement and wrote him to the effect that it was
not in accordance with Mr. Mesmer's understanding with
Mrs. White that Mrs. White was to receive the beach property
and certain other specified items, and Mr. Mesmer was to
receive all interest of Grace Mesmer in and to any other
assets, "and particularly any interest in either Joseph Mes-
mer Company or St. Louis Fire Brick and Insulation Com-
pany." Mr. Hammack prepared a revised agreement and
sent three copies of the same to Mr. Bentley. Mrs. White
signed the agreement and it was returned by Mr. Bentley
to Mr. Hammack and thereafter was signed by Mr. Mesmer.
The agreement provided in part: "That . . . Marie White
will make no claims to and receive no portion of any interest
of Grace Mesmer in the Joseph Mesmer Company or the
St. Louis Fire Brick & Clay Company, or any interest said
A. J. Mesmer may have therein, or in and to any assets
standing in the name of A. J. Mesmer, and Marie White
recognizes and acknowledges that A. J. Mesmer is either the
sole owner thereof or else is entitled to have the same dis-

tributed to him. Marie White hereby assigns to A. J. Mesmer all interest she or Grace Mesmer may have in the property listed above."

Mrs. White caused the will to be probated and herself to be appointed as administratrix with the will annexed. Shortly after her appointment Mrs. White addressed a letter to Mesmer, stating that she had recently discovered that Grace Mesmer at the time of her death owned stock in the Joseph Mesmer Company. At the trial she testified that she had discovered the above mentioned letter in the safe deposit box and had not previously had any knowledge thereof. In her letter to Mr. Mesmer she gave notice of rescission of the agreement upon the ground that ownership of the stock by Grace Mesmer had been fraudulently concealed by plaintiff. This letter was answered by Mr. Mesmer, refuting the charges of fraud. He then brought this action in declaratory relief for determination of the validity of the agreement. Findings and judgment were in his favor and defendant has appealed.

In her answer defendant alleged that she and plaintiff stood in a confidential relationship, and that before the agreement was entered into plaintiff represented to her that Grace Mesmer owned no property other than the residence in which she lived; that said representation was made fraudulently for the purpose of inducing defendant to agree to a division of the property of said decedent; that defendant relied upon the representation in executing the agreement and gave notice of rescission as soon as she discovered the existence of the certificates of stock in Joseph Mesmer Company. As a separate defense the answer alleged that defendant signed the agreement by reason of a threat of plaintiff that unless she did so he would contest the will of Grace Mesmer. It was also alleged that plaintiff took undue advantage of defendant's trust and confidence and that she signed the agreement under a mistake of fact known to and induced by plaintiff that Grace Mesmer had no interest in Joseph Mesmer Company.

The court found that the parties did not stand in a confidential relationship; that they were dealing at arm's length and that neither of them was trusting the other nor relying on any statement made by the other; that plaintiff did not at any time tell defendant that Grace Mesmer did not own any stock in Joseph Mesmer Company or St. Louis Fire Brick and Insulation Company, and did not at any time make any misrepresentation as to what he or Grace Mesmer owned

prior to or at the time of her death; that at no time did defendant or her attorney make any inquiry of plaintiff or his attorney as to what, if any, interest Grace Mesmer had in the Joseph Mesmer Company or St. Louis Fire Brick and Insulation Company; that defendant has been at all times a person of mature years, in good health, intelligent, not of a trusting disposition, and has had experience as a personal representative of another decedent's estate. It was found that defendant did not make a mistake of fact respecting the agreement; that she had declared to plaintiff that she did not claim any interest in and did not want any part of the business, meaning any interest in Joseph Mesmer Company and St. Louis Fire Brick and Insulation Company, and that she signed the agreement with the intention she had previously expressed; that if she acted under a mistake of fact it was due to her neglect of the legal duty to inquire as to the interest of Grace Mesmer in the Joseph Mesmer Company; that although the means of knowledge were open to her and her attorney, neither she nor her attorney inquired into or asked the meaning of Mr. Hammack's letter to Mr. Bentley respecting any interest of Grace Mesmer in the Joseph Mesmer Company, and as to the reasons for the changes made by Mr. Hammack in the terms of the proposed agreement that had been prepared by Mr. Bentley. It was found that defendant negligently failed to make a reasonable inquiry, or any inquiry at all, with respect to the holding of any stock by Grace Mesmer in either of said corporations. It was found that subsequent to the execution of the agreement plaintiff changed his position in that, among other things, he permitted the will of Grace Mesmer to be probated; and that he surrendered possession of the house which defendant received under the agreement, and could not be placed in his former position; that defendant did not offer to restore any of the benefits received by her under the agreement. It was found that defendant did not act under duress. Conclusions of law were made which were appropriate to the facts found, directing judgment that plaintiff was the owner of the stock in question.

As previously stated, the court found that the parties did not stand in a confidential relationship, and that they were dealing at arm's length. Defendant does not question the sufficiency of the evidence to support this finding, but she nevertheless argues that plaintiff had a special duty to make

full disclosure because of the existence of a confidential relationship. The trial court said, in its memorandum opinion: "A dispute arose between them almost immediately, and both sought the assistance of separate counsel, they dealt at arms length, and were represented by their own attorneys during all of the negotiations, and the preparation and execution of the contract."

There was no trustee relationship between the parties as a matter of law. It was a question of fact whether a confidential relationship existed. It was a reasonable deduction from the evidence that defendant did not repose trust and confidence in plaintiff. The finding is therefore conclusive on appeal. (*Silver* v. *Shemanski*, 89 Cal.App.2d 520, 547 [201 P.2d 418]; *Adams* v. *Talbott*, 61 Cal.App.2d 315, 320 [142 P.2d 775]; *Wilson* v. *Sampson*, 91 Cal.App.2d 453, 460 [205 P.2d 753]; *Laherty* v. *Connell*, 64 Cal.App.2d 355 [148 P.2d 895].) Plaintiff therefore had no special duty by reason of the relationship of the parties to disclose any facts concerning Grace's interest in stock in Joseph Mesmer Company.

It is next contended that plaintiff made a partial disclosure of the facts relative to the property owned by Grace, and having done so was guilty of fraud in failing to disclose all the facts that were known to him. The court found that defendant or her attorney made no inquiry as to what interest Grace Mesmer had in either of the two corporations, and that defendant asked only if Joseph Mesmer Company was a stock company. There was evidence that defendant made no inquiry whatever as to the property owned by Grace Mesmer, and that plaintiff made no representation respecting the same, nor any statement which purported to disclose the facts with respect to any property which was owned by Grace Mesmer. Although defendant testified that plaintiff stated to her that Grace Mesmer owned nothing, plaintiff testified that he made no such statement. The court believed him. Moreover, the court found that defendant did not rely upon any statement of plaintiff, and in its memorandum opinion called attention to the testimony of defendant that plaintiff stated to her that Grace Mesmer did not own any separate property, but that she did not believe him. It therefore appears that no facts were established to the satisfaction of the court which would render applicable the rule that one who undertakes to make a disclosure of material facts and discloses some of them is under a duty to disclose the remainder. Both plaintiff and de-

fendant testified that defendant voluntarily stated that she did not want to interfere in the business or with anything that plaintiff and Grace had at the plant, and that she did not want any part of the business. The court found that when she made the statement that she did not claim any interest in the "plant" or the "business" she intended to disclaim all interest in Joseph Mesmer Company and St. Louis Fire Brick and Insulation Company. It would seem that the trial court would have been justified in regarding this disclaimer of defendant as an important fact in determining whether plaintiff had a duty to disclose Grace's ownership of stock in Joseph Mesmer Company, and in determining whether defendant expected plaintiff to state the facts with reference to said stock or believed that he had done so. Defendant's statement could have been understood as implying that she was not interested in learning whether Grace Mesmer had any interest in the business or the extent of any interest she might have. If it was so understood by plaintiff he could scarcely have been found guilty of a breach of duty in refraining from volunteering information on the subject.

Defendant cites the rule that plaintiff's failure to disclose the ownership of the stock was actionable fraud in view of his superior knowledge of the facts. We have seen that plaintiff was under no duty to make such a disclosure, and if he had no duty it is immaterial with respect to the charge of fraud that he had knowledge of facts that were unknown to defendant. The findings acquit plaintiff of the charge of fraud. ■ Misstatement or suppression of facts is not fraudulent unless motivated by an intent to deceive or to induce another to enter into a contract (Civ. Code, § 1572), or unless it amounts to a breach of duty (§ 1573). The question of actual fraud is always one of fact. (Civ. Code, § 1574.) The finding against the charge of fraud may not be disturbed.

The court found that in entering into the agreement defendant did not act under a mistake of fact, but that she acted with the intention previously expressed in her statement that she claimed or wanted no interest in plaintiff's business. The court did not make any finding as to whether defendant had knowledge of the ownership of the stock at the time she entered into the agreement, although the court made comment in its written opinion that it was a strange circumstance that the letter signed "Father" was not discovered when the contents of the safe deposit box were examined. The court did find, however, that defendant was

put on notice that Grace Mesmer may have had an interest in stock in Joseph Mesmer Company by means of the letter written by Mr. Hammack and the changes which he caused to be made in the agreement that had been prepared by Mr. Bentley. These circumstances were of special importance in considering defendant's claim that she entered into the agreement under a mistake of fact. The court found that if defendant was unaware of Grace Mesmer's ownership of the stock her ignorance was due to her inexcusable neglect of the legal duty to inquire as to any interest Grace may have had in the Joseph Mesmer Company.

The agreement as proposed by Mr. Bentley provided, in part: "That the said Marie White will make no claim to and receive no portion of any assets standing in the name of A. J. Mesmer, including the business known as the St. Louis Fire Brick & Insulation Co., a corporation, or any interest said A. J. Mesmer may have herein, and including all other property standing in the name of said A. J. Mesmer, and Marie White recognizes and acknowledges the same to be the separate property of said A. J. Mesmer in which Grace Mesmer had no interest." This portion of the agreement was rewritten by Mr. Hammack to read: "That the said Marie White will make no claims to and receive no portion of any interest of Grace Mesmer *in the Joseph Mesmer Company or* the St. Louis Fire Brick & Insulation Co., or any interest said A. J. Mesmer may have therein, or in and to any assets standing in the name of A. J. Mesmer, and Marie White recognizes and acknowledges that A. J. Mesmer is either the sole owner thereof or else is entitled to have the same distributed to him. Marie White hereby assigns to A. J. Mesmer all interest she or Grace Mesmer may have in the property listed above." (Emphasis added.) The Bentley draft provided: "[s]aid A. J. Mesmer waives and relinquishes any rights to and makes no claim to any property standing in the name of Grace Mesmer." As rewritten by Mr. Hammack this portion of the agreement stated: "The said A. J. Mesmer waives and relinquishes any rights to and makes no claim to any interest in the property *hereinafter* described." (Emphasis added.) The Bentley draft continued: "[a]nd acknowledges the same to have been the separate property of said Grace Mesmer which she was entitled to dispose of by Will and which she did leave to said Marie White," which portion was rewritten to read: "[a]nd acknowledges that the said Grace Mesmer was entitled to dispose of by Will and that she did leave the

same to said Marie White by the Will hereinabove referred to.'' Mr. Hammack's letter stated, in part, that Mr. Mesmer was entitled to receive ''all interest of Grace Mesmer in and to any other assets, and particularly any interest in either Joseph Mesmer Company or St. Louis Fire Brick & Insulation Company.'' Mr. Mesmer's position was clearly and frankly stated by Mr. Hammack, who emphasized that Mesmer *particularly* claimed any interest Grace had in the two corporations. It would seem clear that Mr. Hammack understood that Mrs. White had disclaimed any interest in plaintiff's business of which the stock was considered to be a part, and that he was seeking to have the understanding of the parties expressed in writing to avoid any future misunderstanding. And we think it could reasonably have been inferred that Mrs. White did not intend to claim any interest in Joseph Mesmer Company, and was not curious to know what Grace Mesmer's interest may have been at the time she executed the agreement, but developed an interest only when she discovered the number of shares owned by Grace Mesmer and the value thereof. She says in her brief : ''The fact that the assets of the Mesmer Company was known to her to have come from Mr. Mesmer's family reasonably caused her to assume that any interest of Grace in them would not be significant, because they would be inherited by him. No reasonable person could have anticipated such a Christmas gift as was later found to exist.'' ▮ The court was fully warranted in finding that defendant was put on notice by Mr. Hammack's letter and the revised agreement that Grace Mesmer probably had some interest in the business or its assets. We do not see how it could have been assumed that the changes Mr. Hammack made in the agreement were without a definite purpose, or that they did not add provisions which would be of material advantage to Mr. Mesmer. The court found that defendant was guilty of neglect of a legal duty in failing to make reasonable inquiry, or any inquiry, with respect to Grace's ownership of stock to which the Hammack letter and the redrafted agreement called attention. This was, in effect, a finding that defendant had notice of facts sufficient to put her on inquiry as to Grace's ownership of stock in Joseph Mesmer Company. In *Sime* v. *Malouf*, 95 Cal.App.2d 82, 104 [212 P.2d 946, 213 P.2d 788], where the plaintiff claimed fraudulent concealment of material facts, it was said that ''As to the claim of constructive knowledge,

the issue was whether plaintiff had notice of facts sufficient to put a prudent man upon inquiry and if so, whether an inquiry, reasonably conducted, would have disclosed to him the true state of affairs. This question, of course, was one of fact for the trial court. (*Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 308, 312 [163 P. 47]; *Taylor* v. *Wright*, 69 Cal.App.2d 371, 384 [159 P.2d 980].) The finding that plaintiff had no such notice, if based upon conflicting evidence or reasonable inferences from the evidence, may not be disturbed by this court." (See, also, *West* v. *Great Western Power Co.*, 36 Cal.App.2d 403, 411 [97 P.2d 1014]; 20 Cal.Jur. 240, § 8.)

Defendant had actual knowledge that plaintiff was claiming, and expected to retain, any interest Grace had in the two corporations. The truth was not susceptible of concealment had diligent inquiry been made. The information which defendant possessed was clearly sufficient to charge her with the knowledge she would have gained had she made such inquiry.

Courts of equity will not encourage the cancellation or revocation of instruments on the ground of mistake where they appear to have been executed by the complainant without the exercise of reasonable care. Section 1577 of the Civil Code states the law with reference to mistakes of fact. It limits the mistakes for which relief may be granted to those that are not caused by the neglect of a legal duty. The cases uniformly apply this rule. (*Taylor* v. *Taylor*, 66 Cal. App.2d 390, 398 [152 P.2d 480]; *Fraters G. & P. Co.* v. *Southwestern Const. Co.*, 107 Cal.App. 1, 5, 6 [290 P. 45]; *Roller* v. *California Pacific Title Ins. Co.*, 92 Cal.App.2d 149, 153 [206 P.2d 694].)

It is further contended by defendant that her agreement with plaintiff was no more than the release of a claim, and that under sections 1541 and 1542 of the Civil Code it did not extend to the stock in question. These sections read: (§ 1541) "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration." (§ 1542): "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." No authority is cited for the proposition and we consider it to be without merit. The transaction was

not one between debtor and creditor, nor was the agreement a mere release of a debt.

There was a finding that after the agreement was made plaintiff altered his position by reason thereof, could not be placed in the position he was in before the agreement was entered into, and, as a conclusion, that it would be inequitable to decree a rescission. It is unnecessary to discuss defendant's contention that this finding lacks support in the evidence.

The order denying motion for a new trial being nonappealable, the purported appeal therefrom is dismissed; the judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied December 28, 1953, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1954.