[Civ. No. 53966. First Dist., Div. Five. June 18, 1984.]

RICHARD J. SCHULTZ, Plaintiff and Respondent, v.
COUNTY OF CONTRA COSTA et al., Defendants and Appellants.

**Counsel**

George Deukmejian, Attorney General, Patricia Streloff, Deputy Attorney General, Gretchen R. Mankamyer, Gordon DeFraga and Watrous & Pezzaglia for Defendants and Appellants.

Fredric L. Webster and Sol S. Judson for Plaintiff and Respondent.

**Opinion**

**LOW, P. J.**—Defendants State of California, County of Contra Costa and tax collector, County of Contra Costa, appeal from the judgment of the Contra Costa County Superior Court which rescinded a contract between defendants and plaintiff Richard J. Schultz for the purchase of realty at a tax sale. The court ordered that each party restore to the other the consideration received under the contract. Defendants contend: (1) there was no statutory right to rescission of the tax deed; (2) contract rules of rescission are inapplicable to a deed; and (3) even if contract rules of rescission are

applicable, plaintiff may not rescind on the basis of either failure of consideration or unilateral mistake. We affirm.

Plaintiff, who had never before been to a tax sale, was the highest bidder for a lot in El Cerrito. The bidding for the parcel was spirited; plaintiff joined in the bidding at $7,000, won with a bid of $9,100 and received a deed for the property.

Plaintiff, a carpenter, planned to build a residence for himself on the lot. Prior to the sale, he obtained a map of the parcel from the tax collector's office and examined the neighborhood and the lot. He measured the parcel, noting that it was the size of a small building lot. The neighboring houses "seemed very nice" and there was nothing in his inspection that led him to believe there was a problem with building on the lot.

Plaintiff inquired with the county and was told that the property was not in the county's jurisdiction. The next day, plaintiff, because he had to work, had two coworkers contact the City of El Cerrito regarding the lot. Plaintiff received no adverse information about the lot. He asked a friend at Founder's Title Company to check the title and went to the company to look at records for the property. There were no liens or judgments on the property.

Plaintiff was surprised to learn there was a problem within a week of his purchase when he inquired at the El Cerrito Building Department. It was stipulated at trial that the lot was unbuildable. Plaintiff subsequently appealed the 1979-1980 county tax assessment which valued the lot at $9,100. The appeals board reduced the value to $2,000, suggesting that the parcel had "nominal value . . . because at least you could grow grass on it."

 Defendants claim that the sole remedies for a purchaser at a tax sale are those provided in the Revenue and Taxation Code in reliance on three California cases: *Bell* v. *County of Los Angeles* (1928) 90 Cal.App. 602 [266 P. 291]; *People* v. *Chambers* (1951) 37 Cal.2d 552 [233 P.2d 557]; and *Routh* v. *Quinn* (1942) 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]. These cases do not settle the issue. In both *Bell* and *Chambers,* the purchaser at a tax sale bought land that was improperly sold because it belonged to a governmental entity. Both courts held that because a statutory provision provides for recovery in that situation (in *Bell,* former Pol. Code, § 3898, subd. 5(b); in *Chambers,* Rev. & Tax. Code, § 3730), that remedy is exclusive. (*Bell* v. *County of Los Angeles, supra,* at pp. 605-606; *People* v. *Chambers, supra,* at pp. 561-562.) The *Bell* and *Chambers* holdings are inapplicable to this case because this action is not based on a provision of the Revenue and Taxation Code but on the common law right of rescission as codified in Civil Code section 1689. The court in *Routh* held that because

the doctrine of caveat emptor applied to a purchase at a tax sale, the purchaser could not recover damages suffered as the result of a negligent miscalculation of the delinquent tax by the tax assessor. (*Routh* v. *Quinn, supra,* at pp. 492-493.) *Routh* was based on provisions of the former Political Code which contained no warranties of the validity or regularity of tax sale proceedings. The buyer was "bound to inform himself of the regularity of the tax proceedings," and assumed the risk of error. (*Id.,* at p. 493.) The *Routh* holding is no longer viable because current Revenue and Taxation Code sections 3725-3731 provide a remedy for a purchaser at an invalid or irregular tax sale. These three cases consider distinguishable fact situations applying stringent responsibilities of an antiquated era.

Defendants urge that the reasoning of the Washington Supreme Court in *Anderson* v. *King County* (1939) 200 Wash. 354 [93 P.2d 284], one of the few cases in the United States dealing with this issue, is applicable here. In *Anderson,* the defendant county offered two lots at a tax sale. Although the property was not listed as improved, both the defendant and the ultimate purchaser (the plaintiff) knew that the property was improved with a dwelling at the time the plaintiff applied to buy the property; at the same time, the plaintiff committed himself to a fixed bid and paid in advance a sum which would be applied to the purchase price. Between the date of the plaintiff's application and the date of sale, unknown to the plaintiff, the dwelling was destroyed by the defendant's employees. The plaintiff's application was subsequently accepted and the plaintiff refused to proceed with the sale. He sued to recover his partial payment and the amount of profit he would have made through resale to a third party on the ground that the defendant breached its duty to deliver what it undertook to sell. The Washington Supreme Court rejected plaintiff's argument and stated: "The rule apparently is absolute that, where a statute provides for the reimbursement of purchasers at invalid tax sales, there can be no recovery under circumstances not within the terms of the statute." (*Id.,* at p. 361.) Defendants urge that this court accept and apply this statement. We decline.

The statement is part of the court's general discussion of the law pertinent to the invalidity of tax sales in other states, in particular South Dakota, Minnesota, and Oklahoma. (*Anderson* v. *King County, supra,* 200 Wash. at pp. 361-364.) The Washington court did *not* apply the above-stated rule in the *Anderson* case because Washington statutes provided *no* recovery for the purchaser at a void or invalid tax sale; on that basis, the Washington court applied the doctrine of caveat emptor. (*Id.,* at pp. 360-361, 364.) The *Anderson* court further reasoned that the plaintiff "failed to inspect the land at the time [of the auction] and discover the absence of [the] house . . ." and that the plaintiff was "not entitled, because of his prior knowledge of a house having been on the property . . ., to a position other than that which

would obtain in the case of other purchasers." (*Id.*, at p. 364.) The *Anderson* case is factually and legally distinguishable. The instant plaintiff's error related to a permanent defect in the lot which would not have been cured by later inspection. The tax sale laws as they existed in Washington in 1939 are too dissimilar from California law to be persuasive. We also note that subsequent to the *Anderson* decision, other Washington cases have eroded the doctrine of caveat emptor as applied to Washington tax sales. (*Wingard* v. *Heinkel* (1967) 70 Wn.2d 730 [424 P.2d 1010]; see also *Pierce County* v. *Evans* (1977) 17 Wn.App. 201 [563 P.2d 1263].)

Defendants contend that because Revenue and Taxation Code sections 3725-3731 provide a remedy for a purchaser at an invalid or irregular tax sale, and because Revenue and Taxation Code sections 3518 and 3711 provide that a duly acknowledged or proved tax deed is conclusive evidence of the regularity of tax sale proceedings, except as against actual fraud, that invalidity or irregularity of the proceedings, or fraud, are the only avenues for recovery by a tax sale purchaser. California cases do not so hold; further, the language of these statutes does not indicate that the remedies therein are the *exclusive* means for a purchaser to recover. Since a cause of action for rescission exists pursuant to a contract for sale of property between private parties (Civ. Code, § 1689), rescission is similarly available pursuant to a sale from a public entity to a private party. "The California cases uniformly refuse to apply special rules of law simply because a governmental body is a party to a contract. [Citations.]" (*M. F. Kemper Const. Co.* v. *City of L. A.* (1951) 37 Cal.2d 696, 704 [235 P.2d 7]; see also Civ. Code, § 1635.) Governmental agencies must also contract equitably.

Defendants' contention that a deed is not subject to contract laws of rescission, because it merely conveys title, is without merit. Plaintiff's complaint prayed for a rescission of his purchase and the trial court's judgment rescinded the contract for purchase. Plaintiff's cause of action for rescission was "directed at the *contract of purchase and sale,* the deed being merely the instrument by which the vendor performs." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 687, p. 580.)

Plaintiff's action for rescission was on the grounds of failure of consideration and mistake. (Civ. Code, §§ 1689, subds. (b)(1), (b)(3); 1577.) The trial court ruled that rescission was available on the ground of failure of consideration. However, because there is no evidence that the deed was conditioned on defendants' performance, plaintiff may not base his claim on failure of consideration. The rule that "*failure of consideration* is not a ground for rescinding a deed unless the performance by the grantee (i.e., the consideration) was made a condition subsequent" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 94, p. 1846) also applies

where the grantee attempts rescission. (*Norby* v. *Pister* (1952) 114 Cal.App.2d 510 [250 P.2d 633].)

■ Although the trial court held that there was a failure of consideration, "[i]t has long been the rule that: 'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citations.]" (*Smith* v. *Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 267 [147 Cal.Rptr. 1].)

■ Mistake of fact includes "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: . . . [¶] 2. Belief in the present existence of a thing material to the contract, which does not exist . . . ." (Civ. Code, § 1577.) As explained in the Restatement Second of Contracts section 152, comment a, "[b]efore making a contract, a party ordinarily evaluates the proposed exchange of performances on the basis of a variety of assumptions with respect to existing facts." Where a party's assumption or belief is not in accord with existing facts, and the erroneous belief is material to the party's evaluation of the contractual exchange, the party has made a mistake of fact. (See *id.*, § 151, com. a, p. 383.) Plaintiff believed he was purchasing land on which to build a home for himself. His belief was erroneous because he in fact received a lot which was unbuildable; therefore, plaintiff mistakenly evaluated the contractual exchange. Plaintiff's mistake of fact was material.

Defendants contend that plaintiff's mistake resulted from his own negligence. (Civ. Code, § 1577.) We disagree. There is sufficient evidence that plaintiff "exercised at least the degree of diligence 'which may be fairly expected from a reasonable person.'" (*Grymes* v. *Sanders* (1876) 93 U.S. 55, 61 [23 L.Ed. 798, 801].) Plaintiff made an on-site inspection of the parcel and surrounds, had the title searched, and made reasonable efforts to contact the governmental bodies involved. He received no adverse information. The rule that an instrument executed by the complainant without the exercise of due care will not be rescinded does not apply. (Cf. *Mesmer* v. *White* (1953) 121 Cal.App.2d 665, 674 [264 P.2d 60]; *Roller* v. *California Pacific Title Ins. Co.* (1949) 92 Cal.App.2d 149, 155 [206 P.2d 694]; *Fraters G. & P. Co.* v. *Southwestern C. Co.* (1930) 107 Cal.App. 1, 5-6 [290 P. 45].)

Defendants argue that despite plaintiff's mistake, the contract must be enforced because plaintiff's outward manifestations of expression never conveyed his purpose in contracting to purchase the land. Two of the cases cited by defendants do not apply this rule in the context of a rescission suit (see, e.g., *Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38 [154 Cal.Rptr. 652] [action for declaratory relief as to effect of assignment agreement]; *Meyer* v. *Benko* (1976) 55 Cal.App.3d 937 [127 Cal.Rptr. 846] [action for specific performance]). A third case cited by defendants does state the rule as it applies to this case: "But it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, *in the absence of mistake,* fraud, etc., *immaterial* . . . ." (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13], italics added.)

Thus, where rescission on the ground of mistake is considered, as here, the outward manifestations of the parties, which resulted in the formation of the contract, are not controlling. As specified in the Restatement Second of Contracts section 151, comment a, a party's erroneous belief "need not be an articulated one . . . ." (P. 383.)

Grounds for rescission provided in Civil Code section 1689, subdivision (b)(1) include that of unilateral mistake: "A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding . . . was given by mistake . . . ." The general rule, designating when one party's mistake makes a contract voidable, as set forth in section 153 of the Restatement Second of Contracts, is: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and [¶] (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or [¶] (b) the other party had reason to know of the mistake or his fault caused the mistake."[1]

---

[1]Section 154 of the Restatement Second of Contracts reads: "A party bears the risk of a mistake when

"(a) the risk is allocated to him by agreement of the parties, or

"(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

"(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so."

Section 154 would apply to a situation where, for example, it was known that the purchaser of realty was speculating as to the existence of oil beneath the surface of the land. In that case, the purchaser would have incorporated the risk into the basic assumptions on which he or she entered into the contract of purchase. Here, plaintiff's purpose was ordinary: He desired to build a residence on a vacant lot in an established residential neighborhood.

Plaintiff did not argue that the Restatement Second of Contracts section 153, subdivision (b) applies, for there was no evidence introduced which would support a contention that defendants knew of plaintiff's mistake. Counsel for defendants stated, at oral argument, that plaintiff's predecessor-in-interest's home had been demolished because the lot was located in a slide area. Prior to the tax sale, defendants removed a demolition lien encumbering the property. If this information had been in evidence below, another ground for rescission may have existed under the Restatement Second of Contracts section 153, subdivision (b).

California courts have followed the rule in the Restatement Second of Contracts section 153, subdivision (a). ▓▓▓ In *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749 [75 Cal.Rptr. 533], the court observed, "It is clear, however, that a court, under its equitable power, does have the right to rescind a contract for the purely unilateral mistake of one contracting party not induced or contributed to by the other party. [Citations.]" (*Id.,* at pp. 764-765, and cases cited therein.) In reaching its decision, the *Lawrence* court balanced the burdens and hardships imposed on the parties. (*Id.,* at p. 766.) Considering the equities, if the contract were enforced, plaintiff would bear the hardship of paying an amount in excess of the lot's value and receiving land which was virtually useless. Defendants received more value than the lot was worth. Thus, rescission is equitably suitable in the instant case because enforcement of the contract would result in a substantial burden on plaintiff.

The judgment is affirmed.

Haning, J., concurred.

**KING, J.**—I dissent because the sole remedies for a purchaser of real property at a tax sale are those provided in the Revenue and Taxation Code. The Legislature has never changed the historic rule that the doctrine of caveat emptor, let the buyer beware, applies to purchasers of real property at tax sales which take place at public auction.

Historically, the purchase of title to property at a tax sale was viewed as a speculative act; tax titles were often invalidated for minor procedural errors. Thus, purchasers at tax sales were subject to the rule of caveat emptor. (See *Bell* v. *County of Los Angeles* (1928) 90 Cal.App. 602, 605 [266 P. 291].) One rationale behind this rule was that all potential purchasers could inspect the tax records and learn the status of the land. (72 Am.Jur.2d, State and Local Taxation, § 1037, p. 307.) To provide some stability to tax titles, California passed legislation which corrected minor defects in tax titles and provided conclusive presumptions on the regularity

of tax sales. (See 2 Bowman, Ogden's Revised California Real Property Law (Cont.Ed.Bar 1975) §§ 21.26-21.30, pp. 1098-1103.) One such provision is Revenue and Taxation Code section 3711, which states "[e]xcept *as against actual fraud,* the deed duly acknowledged or proved is conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed, both inclusive." (Italics added.) If a person succeeds in voiding the tax title because the tax sale was invalid or irregular, the purchaser of the tax title is entitled to reimbursement from the county. (Rev. & Tax. Code, §§ 3725-3731.) However, these legislative changes have not otherwise changed or eliminated the applicability of the doctrine of caveat emptor to purchasers of tax titles at public auction.

California cases hold that purchasers at tax sales may only recover damages from the seller as authorized by statute. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 490 [127 P.2d 1, 149 A.L.R. 215]; *People* v. *Chambers* (1951) 37 Cal.2d 552 [233 P.2d 557].) These cases deal with tax titles that are worthless or void due to procedural defects. In such cases, statutes provide reimbursement remedies for disappointed purchasers. There is no statutory or case authority which provides recovery because the purchaser's undisclosed purpose in buying the property cannot be carried out.

In the instant case, appellant purchased a perfectly valid tax title. He neither alleged nor showed actual fraud in the tax sale, nor does he claim the tax sale was invalid or irregular, so he cannot recover under reimbursement provisions of the Revenue and Taxation Code. He claims he is entitled to rescind his purchase under general contract principles because he did not know the land was "unbuildable." Appellant raises an issue of first impression—whether a purchaser at a tax sale is entitled to rescind the sale due to his unilateral "mistake" where no misrepresentation or concealment can be charged to the state or county.

The policies behind the caveat emptor rule in tax sales justify its application here. Each bidder at a tax sale has his or her own undisclosed plans, foreseeable or unforeseeable, for use or development of the property. It is reasonable to require bidders to verify that these plans are legally permissible under local zoning and building regulations and physically feasible on the property. It is a minimal burden on bidders to require them to obtain information about the property from public agencies before they bid. If appellant had consulted the City of El Cerrito Building Department before he bid at the tax sale, he would have discovered, as he did by making such an inquiry one week later, that the property was unbuildable.

The majority, on the other hand, would require the state to anticipate potential undisclosed uses of bidders at tax sales and warrant the validity of

such undisclosed uses or development. I believe this burden is unreasonable and unjustified. The state has no reason to know of physical or legal restrictions, especially those imposed by local government, which may prevent or affect the particular development or use of the property which the purchaser has in mind. For example, under the majority's view, a buyer at a tax sale could apparently purchase property at a tax sale with the intention of building apartments upon it, only to learn after the sale that the property is zoned for single family residential use and no rezoning can be obtained. Should such a successful bidder at a tax sale be able to rescind the sale due to his unilateral mistake and his own failure to investigate? I think not.

In the instant case, the City of El Cerrito Building Department, long before the tax sale, had imposed a prohibition on development on this parcel. There is no evidence the state knew or should have known of this prohibition.[1] The state obtains tax-sold property by operation of law. Unlike private owners, the state has no interest in restrictions on the potential use of property or its development; its sole interest is the recovery of back taxes. The burden should be on buyers at tax sales at public auction, in advance of the sale, to take all steps necessary to assure themselves that the use and development of the property which they have in mind will be permitted by local government. It is onerous, if not impossible, to require the state or county to physically examine real property prior to a tax sale and, further, to dispel any undisclosed mistaken beliefs of bidders. The burden should be left to the most interested parties, the bidders.

The majority misses the mark when it concludes that "[t]he instant plaintiff's error related to a permanent defect in the lot which would not have been cured by later inspection." While a physical inspection of the property would not have shown it was unbuildable, plaintiff could have discovered this information before the tax sale by reasonable investigation through the public regulatory agencies. There was nothing that precluded him from obtaining the same information prior to the tax sale which he obtained one week thereafter.

Nothing has changed California's law on tax sales as pronounced by our Supreme Court over 40 years ago "that in tax sales the doctrine of *caveat emptor* applies in all its vigor." (*Routh* v. *Quinn, supra,* 20 Cal.2d at pp. 488, 490.)

---

[1]The majority notes that the county removed a demolition lien on the property prior to the tax sale. There was no evidence that this was an irregular procedure or that the county knew the reason for the demolition which resulted in the lien.

Because I believe the doctrine of caveat emptor properly places the risk of mistake on potential buyers at tax sales, I would reverse the judgment.